JAMES B. GLENNON, ESQ. (SBN 303134)
S. ALEX WEBB, ESQ. (SBN 291236)
**FORAN GLENNON PALANDECH PONZI & RUDLOFF PC**
38 Corporate Park
Irvine, CA 92606
Telephone:  (949) 791-1060
Facsimile:   (949) 791-1070
Email:        jglennon@fgppr.com
                 awebb@fgppr.com

Attorneys for Plaintiffs, BROOKFIELD PROPERTY GROUP, LLC – US and STARR SPECIALTY LINES INSURANCE AGENCY LLC (ACTING ON BEHALF OF LLOYD'S SYNDICATE CVS 1919)

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BROOKFIELD PROPERTY GROUP, LLC – US; STARR SPECIALTY LINES INSURANCE AGENCY LLC (ACTING ON BEHALF OF LLOYD'S SYNDICATE CVS 1919), <br><br> Plaintiffs, <br><br> vs. <br><br> LIBERTY MUTUAL FIRE INSURANCE COMPANY, <br><br> Defendant. | Case No. <br><br> **COMPLAINT FOR DAMAGES FOR:** <br><br> **1. BREACH OF CONTRACT** <br><br> **2. EXPRESS INDEMNIFICATION** <br><br> **3. DECLARATORY RELIEF – EQUITABLE CONTRIBUTION** <br><br> **4. DECLARATORY RELIEF** |

NOW COME Plaintiffs, BROOKFIELD PROPERTY GROUP, LLC ("Brookfield"), and STARR SPECIALTY LINES INSURANCE AGENCY LLC (ACTING ON BEHALF OF LLOYD'S SYNDICATE CVS 1919) ("Starr"), by and through their undersigned counsel and for their Complaint for Damages against Defendant, LIBERTY MUTUAL FIRE INSURANCE COMPANY ("Liberty Mutual"), allege upon information and belief as follows:

-1-
COMPLAINT FOR DAMAGES

**THE PARTIES**

1. At all relevant times, Brookfield was a limited liability company duly organized under the laws of the State of Delaware, with its principal place of business in the State of New York and is authorized to do business in California. Brookfield is an owner of the property known as 110 East 9th Street, Los Angeles, California ("Property").

2. Starr is an insurance company organized and existing under the laws of the State of Texas and has its principal place of business in the State of New York. Starr is authorized to transact business including the issuance of insurance policies in the State of California. At all times relevant, Starr provided property insurance to Brookfield pursuant to Policy of Insurance No. WC 4416.

3. Liberty Mutual is a company organized and existing under the laws of the State of Wisconsin and has its principal place of business in the State of Massachusetts. Liberty Mutual is authorized to transact business and to issue and service commercial general liability insurance policies in the State of California. At all times relevant, Liberty Mutual provided general liability insurance to TURNER CONSTRUCTION ("Turner") under a presently unknown policy number. The Liberty Mutual claim number relative to this matter is P 220-188590-01.

**JURISDICTION AND VENUE**

4. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, subd. (a). Complete diversity exists between the parties, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

5. Defendant is subject to personal jurisdiction in this Court because they transact business in the State of California and/or have entered into one or more contracts of insurance with Plaintiff to be performed in the State of California subject to the jurisdiction of a Court of competent jurisdiction within the United States.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391, subd. (b)(2) because a substantial part of the events or omissions giving rise to the claims for relief alleged herein occurred within this District.

7. The contracts of insurance at issue in this action (also referred to herein as insurance policies and insurance products) apply to business operations, real and personal property, insured risks, and related contingent perils within the State of California, and therefore, the disputed contractual language is governed by California law pursuant to Section 1646 of the California Civil Code; and the claims-handling disputes are governed by the common law of California, including the implied covenant of good faith and fair dealing; relevant provisions of the California Insurance Code including Section 791.01 et seq.; and the Fair Claims Settlement Practices Regulations set forth in Title 10 of the California Code of Regulations.  10 CCR §§ 2695.1-2695.14.

## PRELIMINARY AND GENERAL ALLEGATIONS

8. In 2018, Turner entered into a Construction Management Agreement ("CMA") with Brookfield entity Calmart Sub I, LLC, for the construction and renovation of the existing buildings for the Calmart Property Redevelopment project located at the Property ("Project").  Under the terms of the CMA, Brookfield was identified as the "Owner"; Turner was to act as the Project's "Construction Manager."  A true and correct copy of the CMA is attached as Exhibit "A" and is incorporated herein by reference as though set forth in full.

9. Pursuant to the CMA, Exhibit J, Turner was required to procure a Commercial General Liability insurance policy, subject to the following terms and conditions:

> \* \* \*
>
> (d) **Construction Manager's insurance will be primary and non-contributory with respect to Owner's insurance** or self-insurance programs.

-3-
COMPLAINT FOR DAMAGES

\* \* \*

(f) **Construction Manager's insurance policies will include the obligation to defend and include** the Additional Insureds listed on the Cover Page (which include but may not be limited to **Owner, Owner's property manager, Owner's landlords, co-tenants and subtenants, Owner's lender and their directors, officers, representatives, agents, and employees**) **as additional insureds on a primary and noncontributory basis** for Work performed under or incidental to this Agreement. **If an Additional Insured has other insurance applicable to the loss, it will be on an excess or contingent basis**. Neither Construction Manager's obligation to provide insurance nor the scope of such insurance coverage shall be reduced by the existence of such other insurance.

\* \* \*

(h) Construction Manager shall carry the following insurance policies in the following amounts and with the following terms and conditions:

Commercial General Liability: The Construction Manager will maintain Commercial General Liability insurance covering all operations by or on behalf of the Construction Manager on an occurrence basis against claims for bodily injury, **property damage** (including the loss of use thereof), personal injury and advertising injury. Such insurance will have the minimum limits, terms and conditions specified below, and **shall be primary and noncontributory to any other valid and collectible insurance maintained by the Construction Manager, the Owner** and all other Indemnitees; such limits may be provided in the form of a

primary policy or combination of primary and umbrella/excess policies, each meeting the conditions specified herein for such policies. (Emphasis added)

10. The CMA also specifically stated in Exhibit J that "Brookfield Properties Management (CA) Inc., and their respective affiliates, shareholders, members (including members of members), partners (including partners of partners), subsidiaries, and related entities, and each of their respective successors and assigns…" be named as Additional Insureds under the Commercial General Liability insurance policy obtained by Turner.

11. On or about December 28, 2020, a significant rainstorm occurred at the Project site, which deposited approximately two (2) inches of rain over a three (3) day period.

12. Rainwater flowed into the building at several points, including the roof above the utility elevators, open doors, and ramps that connected two buildings on several different floors.

13. Turner attempted to block the water's flow and impact through the use of ground-based barriers and tarps placed over electrical equipment. However, these mitigation attempts failed to prevent the flow of water into the building and its impact upon electrical cabinets and elevators.

14. Due to the water intrusion, Brookfield incurred damages in an amount of approximately $800,000.

## FIRST CAUSE OF ACTION

**(For Breach of Contract by Brookfield and Starr against Liberty Mutual)**

15. Plaintiffs hereby reallege and incorporate by reference all preceding allegations in Paragraphs 1 through 14 of the Complaint as though fully set forth herein.

16. At all relevant times, Liberty Mutual provided general liability insurance to Turner, under which Brookfield is an additional insured.

17. Every policy of insurance includes an implied covenant of good faith and fair dealing, which provides that neither party will do anything which will injure the rights of the other to receive the benefits under the policy.

18. On March 1, 2021, Liberty Mutual Senior Claims Specialist Nicole Doherty issued a coverage denial to Brookfield for the underlying matter, attached as Exhibit "B" and incorporated herein by reference as though set forth in full.

19. Ms. Doherty's coverage position letter identified Liberty Mutual Claim Number P 220-188590-01 for the loss at the Property.

20. Ms. Doherty's coverage position letter stated, in pertinent part, "It is Liberty's position that the [Brookfield] All Risk policy is primary…" while providing no legal basis for such a position.

21. On October 21, 2021, in response to a request for reconsideration of Liberty Mutual's unsupported position, Ms. Doherty, again with no legal basis whatsoever, reiterated her denial of coverage to Turner and Brookfield stating via e-mail:

> …it is still [Liberty Mutual's] position that Brookfield has obtained All Risk Property coverage for the project in question. As such, I reiterate Liberty's position that the All Risk policy is primary and should be placed on notice of this loss as Liberty's policy carriers [sic] a "Your Work" exclusion and thus the All Risk policy would provide coverage to any damages excluded under Turner's general liability policy. Coverage would only be triggered under Liberty's policy if and when we receive something in writing from the All Risk underwriter and/or carrier disclaiming coverage for this loss.

22. Defendant Liberty Mutual has breached the implied covenant of good faith and fair dealing by unreasonably failing and/or refusing to properly interpret its own policy and, in turn, failing and/or refusing to pay the policy benefit.

23.     Pursuant to the CMA, Brookfield was to be named as an additional insured under the Liberty Mutual policy.

24.     Ms. Doherty's March 1, 2021, coverage position letter denying coverage to Brookfield identifies the existence of a policy issued by Liberty Mutual, a copy of which Plaintiffs have requested but have not been provided.

25.     Ms. Doherty's coverage position letter identifies that coverage is available to Brookfield under the Liberty Mutual policy and, in fact, does provide coverage with respect to some or all of Brookfield's claimed losses in connection with the underlying loss, requiring that Liberty Mutual indemnify Brookfield pursuant to the terms of the Liberty Mutual policy.

26.     Liberty Mutual has and continues to fail and/or refuse to acknowledge and recognize that the claimed losses were in fact covered under the Liberty Mutual policy, which is primary pursuant to the terms of the CMA and has unequivocally refused to indemnify Brookfield for its losses, as required under the terms of the Liberty Mutual policy, under which Brookfield is an insured.

27.     Brookfield performed in accordance with the terms and conditions standard of a policy for insurance, except to the extent that Brookfield was prevented from doing so by Liberty Mutual or is otherwise excused from performance.

28.     By reason of the failure and/or refusal of Liberty Mutual to provide coverage to Brookfield for its losses in connection with the underlying loss, despite its express obligation to do so under the terms of the Policy and applicable law, Liberty Mutual has breached the written contract of insurance under which Brookfield is entitled to coverage as an additional insured.

29.     By reason of the failure and/or refusal of Liberty Mutual to indemnify Brookfield and Starr for their respective losses in connection with the underlying loss, despite its express obligation to do so under the terms of the Liberty Mutual

policy and applicable law, Liberty Mutual has breached the written contract of insurance under which Brookfield and Starr are entitled to indemnification.

30. As a direct and proximate result of Liberty Mutual's breaches, Brookfield and Starr have been forced to incur fees, costs, and expenses in an amount to be determined at trial.

31. As a direct and proximate result of Liberty Mutual's breached, Brookfield and Starr incurred and will continue to incur attorney fees and costs, expert fees and costs, and other costs and expenses in excess of $800,000.

## SECOND CAUSE OF ACTION

**(For Express Indemnification by Brookfield and Starr Against Liberty Mutual)**

32. Plaintiffs repeat, replead, and reallege each and every allegation set forth in paragraphs 1 through 31, inclusive, of this Complaint, as though fully set forth herein.

33. An actual controversy has arisen and now exists between Plaintiffs and Defendant concerning their respective rights and liabilities with respect to this matter.

34. Brookfield and Starr contend that the Policy issued by Liberty Mutual, under which Brookfield is an additional insured, is the primary policy for a loss such as is the subject of this litigation, for which the total damages amount to $869,392.20.

35. Brookfield and Starr contend that it has received from Starr payment in the amount of $619,392.20, net of Brookfield's $250,000 deductible.

36. Brookfield and Starr assert that Liberty Mutual was required to indemnify Brookfield and Starr for damages sustained in connection with the underlying loss in their entirety.

37. By reason of the failure and/or refusal of Liberty Mutual to indemnify Brookfield and Starr for their respective losses in connection with the underlying

loss, despite its express obligation to do so under the terms of the Liberty Mutual policy and applicable law, Brookfield and Starr are entitled to indemnification.

38. As a direct and proximate result of Liberty Mutual's failure to indemnify Plaintiffs, Brookfield and Starr have been forced to incur fees, costs, and expenses in an amount to be determined at trial.

39. As a direct and proximate result of Liberty Mutual's failure to indemnify, Brookfield and Starr incurred and will continue to incur attorney fees and costs, expert fees and costs, and other costs and expenses in excess of $800,000.

## THIRD CAUSE OF ACTION

**(For Equitable Contribution by Starr Against Liberty Mutual)**

40. Plaintiffs repeat, replead, and reallege each and every allegation set forth in paragraphs 1 through 39, inclusive, of this Complaint, as though fully set forth herein.

41. On or about December 28, 2020, the Property sustained damages in the total amount of $869,392.20.

42. To date, Starr has paid $619,392.20 to Brookfield under its insurance policy as a result of the damage sustained to the Property.

43. To date, Liberty Mutual has paid nothing in connection with the underlying loss.

44. As it is reflected unambiguously in the CMA, the Liberty Mutual policy was intended by the parties to be the primary policy for a loss such as is the subject of this litigation.

45. Accordingly, Liberty Mutual is required to reimburse Starr in the amount of $619,392.20.

///

///

///

## FOURTH CAUSE OF ACTION

**(For Declaratory Relief by Brookfield and Starr Against Liberty Mutual)**

46. Plaintiffs hereby reallege and incorporate by reference all preceding allegations in Paragraphs 1 through 45 of the Complaint as though fully set forth herein.

47. An actual controversy now exists between Plaintiffs Starr and Brookfield against Liberty Mutual concerning each parties' rights and/or obligations, as it is reflected unambiguously in the CMA, that the Liberty Mutual policy was intended by the parties to be the primary policy for a loss such as is the subject of this litigation.

48. Liberty Mutual contends that its policy of insurance is triggered only in the event that Liberty Mutual receives "something in writing from the All Risk underwriter and/or carrier disclaiming coverage for this loss" which would thereby render Liberty Mutual's policy of insurance excess to the Starr policy issued to Brookfield, in contradiction to the CMA, for damage caused to the Property by Liberty Mutual's insured.

49. A judicial declaration is necessary and appropriate at this time in order that Starr and Brookfield may ascertain their respective rights, and Liberty Mutual's rights and duties with respect to Liberty Mutual's contractual obligations to both Turner and Brookfield, as an additional insured under the Liberty Mutual policy.

## PRAYER

WHEREFORE, Plaintiffs pray for judgment against the Defendant, and each of them, as follows:

1. For compensatory damages in an amount to be proven at trial;
2. For pre-judgment interest pursuant to *Civil Code* Section 3287-3288;
3. For post-judgment interest;

///

///

4.     For such other and further relief as the court may deem just and fair.

DATED: January 6, 2023

**FORAN GLENNON PALANDECH PONZI & RUDLOFF PC**

By:    */s/ James B. Glennon*
         James B. Glennon
         S. Alex Webb

Attorneys for Plaintiffs BROOKFIELD PROPERTY GROUP, LLC – US and STARR SPECIALTY LINES INSURANCE AGENCY LLC (ACTING ON BEHALF OF LLOYD'S SYNDICATE CVS 1919)